## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TONY ROWLAND** | ) | |
| | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JULY TRIAL DEMANDED** |
| **MEDTRONIC, INC. and ALLISON** | ) | |
| **LOPRESTI** | ) | |
| | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Tony Rowland ("Mr. Rowland" or "Plaintiff") respectfully submits

this Complaint for Damages and Equitable Relief and alleges as follows:

## INTRODUCTION

1.     Mr. Rowland is an African American male who was formerly employed

by Medtronic, Inc. ("Medtronic") as a Sales Representative. He was the only black Sales

Representative in the Pain Business in Medtronic's Atlanta territory. Despite

satisfactory performance in his role, Mr. Rowland suffered disparate treatment when

Medtronic targeted him for termination as part of a sham reduction-in-force ("RIF")

which affected only his position. After his position was eliminated, Mr. Rowland

submitted a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). He then applied to several other positions at Medtronic and has been denied for all of them despite being qualified for those respective roles. Medtronic has discriminated against Mr. Rowland on the basis of his race and retaliated against him for bringing a complaint of discrimination.

2.      Plaintiff files this Complaint for declaratory, injunctive, and monetary relief against Medtronic for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("section 1981") and for sex and intersectional discrimination in violation of Title VII.

## JURISDICTION AND VENUE

3.      The Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      The violations of Plaintiff's rights occurred in the Northern District of Georgia. Venue for this action in the Northern District of Georgia under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions, and the unlawful actions and practices which give rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE

5.     Plaintiff timely filed a Charge of Discrimination with the EEOC on October 6, 2021 alleging discrimination based on race.

6.     Plaintiff timely filed an Amended Charge of Discrimination with the EEOC on February 1, 2022 alleging retaliation and discrimination based on race and sex.

7.     Plaintiff has satisfied all administrative prerequisites to perfect his claims of discrimination and retaliation under Title VII. Specifically, he timely filed Charges of Discrimination with the EEOC alleging retaliation and race and sex discrimination and timely filed this lawsuit following receipt of a of Right to Sue letter for his claims under Title VII.

## PARTIES

8.     Plaintiff is now and was at all times relevant to this action a citizen of the United States entitled to bring actions of this type and nature. Plaintiff is and was at all times relevant to this action a resident of the state of Georgia.

9.     Defendant Medtronic is a domestic for-profit corporation. Its principal office address is 710 Medtronic Parkway, Minneapolis, MN 55432. Its registered agent for service of process is Corporation Service Company. Process can be served at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

10.    Medtronic is an "employer" as defined by Title VII.

11.    Defendant Allison LoPresti ("LoPresti") is a white female and at all relevant times served as the Sales Manager at Medtronic. LoPresti is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at her dwelling place or usual place of abode with some person of suitable age and discretion residing there.

## FACTUAL BACKGROUND

### Plaintiff's Background and Qualifications

12.    Plaintiff is a black male.

13.    Plaintiff has a Bachelor of Science degree with a concentration in Biology and Chemistry.

14.    Plaintiff has worked in numerous medical sales occupations continually since 2013.

15.    Throughout his experience in medical sales, Plaintiff has gained years of experience in developing and maintaining relationships with physicians, and generating business from hospitals, laboratories, independent practices, and surgery centers, providing technical assistance for medical products.

### Beginning of Plaintiff's Employment

16.    Plaintiff began working for Medtronic on August 31, 2020 as a Sales

Representative in Medtronic's Pain business in the Atlanta, GA sales territory.

17.     Medtronic divides its employees into different "therapy divisions" or "businesses" such as "Interventional business," "Pain business," or "Cardiology business."

18.     The Pain business and the Interventional business are closely related in terms of the type of medical products sold, so much so that Medtronic encouraged sales representatives from these two businesses to interact with each other to assist with sales and service of Medtronic's clients.

19.     Plaintiff was previously offered a position with Medtronic in Nashville, TN, but he was persuaded to accept a position in Atlanta, GA.

20.     To convince Plaintiff to accept the position in Atlanta, GA, Medtronic offered Plaintiff a sales incentive guarantee for his first year and promised that he would inherit the accounts from Rick Jernigan, a sales representative who was going to retire soon.

21.     Blake Phillipy, the District Sales manager who was going to be Plaintiff's direct supervisor for the Atlanta, GA position told Plaintiff that the position would take about a year to learn and that his sales incentive guarantee would give him enough time to learn the position and be prepared to manage the accounts that he was to inherit.

22.     When he was hired, Plaintiff was the only black sales representative in

Medtronic's southeast district working in the Pain business or Interventional business. The other Sales Representatives in the Pain business or Interventional business were all white.

23.   Plaintiff was successful as a sales representative throughout his employment.

24.   Plaintiff's performance evaluation dated June 9, 2021 and conducted by Phillipy shows that he achieved or exceeded all the goals set for him whether measured by Plaintiff's own evaluation or Phillipy's.

25.   This performance evaluation also stated that he was performing well especially considering the exacerbating circumstances created by the COVID-19 pandemic.

### Allison LoPresti Becomes Plaintiff's Manager

26.   Allison LoPresti became Plaintiff's manager in the early summer of 2021.

27.   Upon taking over as Plaintiff's manager, LoPresti began to add extra work to Plaintiff's responsibilities. LoPresti justified this additional work by claiming that she was seeing how much he could handle.

28.   This additional work included daily check-ins, weekly reports, and an increase in assisting doctors with surgeries and bringing products to surgeries.

29.   In the course of performing all of these additional responsibilities, Mr.

Rowland would log over 2,000 miles of driving per month, regularly work 12 hours a day in the field, and then return home and write reports which LoPresti required of him.

30.    Plaintiff's fellow Sales Representatives, none of whom were black or were black males, were not required to perform these extra tasks.

31.    The accounts of Rick Jernigan that were promised to Plaintiff were given to a white sales representative, Ben Charlton.

32.    LoPresti also forced Plaintiff to split credit for the account of Dr. Zwade Marshall with Ben Charlton even through Plaintiff spent significantly more time and effort on the account.

## Plaintiff is Selected for a One-Person Reduction-in-Force

33.    On August 17, 2021, Plaintiff was informed that he would be part of a reduction-in-force effective October 16, 2021.

34.    Plaintiff was the only individual selected to be part of this reduction-in-force.

35.    Medtronic has represented that this reduction-in-force was conducted because the revenue generated in Southeast territory could not support the staff that was working at the time of the reduction-in-force. However, shortly before conducting this one-person reduction-in-force, Medtronic hired a white female, Melissa Kimbrell.

36.    Medtronic also hired a female Sales Representative in the Intervention

business shortly before Plaintiff was terminated.

37.     These hirings of individuals outside of Plaintiff's protected classes show that Defendants intended to discriminate against Plaintiff on the basis of his race and sex.

38.     Prior to being notified of the reduction-in-force, Plaintiff was never offered any opportunity to apply for or transfer into any other position with Medtronic.

39.     When he was informed of Medtronic's decision to include him in the alleged reduction-in-force, Mr. Rowland sent a text message to LoPresti to ask if there was any reason other than a reduction-in-force for his termination. LoPresti gave no other reason and specifically said, "[t]his was a reduction in force and your position was impacted."

40.     In the months following Plaintiff's termination, Medtronic publicly advertised openings in the Atlanta area for positions similar to Plaintiff's position.

41.     Medtronic has often allowed terminated employees to seek and obtain other positions with Medtronic that are not in the same business. In one instance, Medtronic terminated a white Sales Representative who worked in the Pain business and re-hired him in the Cardiology business.

## Medtronic Continues to Discriminate Against Plaintiff and Retaliates Against Him by Refusing to Hire Him

42.     In late September or early October of 2021 Plaintiff applied for a Territory

Development Representative position with Medtronic.

43.     On October 14, 2021, Plaintiff received an email from Joseph Kevin Breen asking if he was available for an interview for the Territory Development Representative position on October 20, 2021. This interview was rescheduled for October 22, 2021.

44.     The first interview went well, and it appeared Mr. Breen was interested in hiring him.

45.     On October 26, 2021, Plaintiff received an email from Breen asking to schedule a second interview for the Territory Development Representative position for October 28, 2021. Plaintiff scheduled the interview for October 28, 2021 and was interviewed on that date.

46.     During the second interview, Breen did not speak much and did not ask many questions. The other two interviewers, Christopher Liptak and John James asked all of the questions.

47.     The majority of the questions that Liptak and James asked did not relate to the Territory Development Representative positions, but rather related to how Mr. Rowland got his first job with Medtronic.

48.     The tone of the second interview was quite different from the tone of the first interview. The way in which Liptak and James asked questions of Plaintiff during

the second interview led Plaintiff to believe that they were more interested in investigating the circumstances surrounding his separation from Medtronic rather than figuring out if he was a suitable candidate for the Territory Development Representative position.

49.     Plaintiff was not selected for the position of the Territory Development Representative position. Instead, Medtronic hired a white female for this position.

50.     Since being notified of his inclusion in the one-person reduction-in-force, Plaintiff has applied for many other positions at Medtronic that he was qualified for including, but not limited to the following positions:

- Sales Representative, Interventional Radiology;

- Associate Sales Representative, Surgical Instrumentation;

- Three postings for a Clinical Consultant II, Surgical Synergy;

- Strategic Sales Specialist, ENT;

- Sales Representative, Cardiac Rhythm Management;

- Surgical Sales Representative, GYN;

- Associate Sales Representative, Respiratory Interventions;

- Associate Sales Representative, Surgical Innovations;

- Sales Representative I, Spine;

- DBS Sales Representative; and

- Associate Sales Rep, Surgical Instrumentation.

51.     Despite being qualified for all of these positions by virtue of his education and previous experience in medical sales, Plaintiff has not been selected for any of them or even been selected for an interview. Instead, Medtronic hired a female for one of the positions for Clinical Consultant II and a white female for one of the other positions for Clinical Consultant II.

52.     After Plaintiff was rejected from these positions, Medtronic continued to seek applications for these positions.

**COUNT I**
**42 U.S.C. § 1981 – RACE DISCRIMINATION – DISPARATE TREATMENT**
*Against All Defendants*

53.     Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

54.     Plaintiff was employed by Medtronic.

55.     LoPresti had the capacity to terminate Plaintiff and made the decision to terminate Plaintiff on or about August 17, 2021.

56.     LoPresti had the capacity to decide how to split credit for the account of Dr. Zwade Marshall and made the decision to split credit for that account between Plaintiff and Ben Charlton.

57.     Defendant refused to rehire Plaintiff for multiple positions for which he

was qualified.

58.   42 U.S.C. § 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to his employment.

59.   Defendants discriminated against Plaintiff in the terms and conditions of his employment when, among other things, they imposed additional work requirements on him not required of other non-black employees, forced him to split credit for the account of Dr. Zwade Marshall with Ben Charlton, refused to allow Plaintiff to inherit the accounts of Rick Jernigan, terminated him and refused to rehire him for positions he was qualified to perform because of his race.

60.   The above-pleaded discriminatory conduct toward Plaintiff constitutes unlawful race discrimination against Plaintiff in the terms and conditions of his employment in violation of 42 U.S.C. § 1981.

61.   Defendants undertook their conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Defendants.

62.   Defendants' actions constitute unlawful intentional race discrimination in violation of 42 U.S.C. § 1981.

63.   Defendants willfully and wantonly disregarded Plaintiff's federally

protected rights and Defendants' discrimination against Plaintiff was undertaken in bad faith.

64.     As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

65.     Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendants' violation of his rights under 42 U.S.C. § 1981.

**COUNT II**
**42 U.S.C. § 1981 – RACE DISCRIMINATION – HOSTILE WORK ENVIRONMENT**
*Against All Defendants*

66.     Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

67.     At all times material to this Complaint, Plaintiff was employed by Medtronic.

68.     LoPresti was Plaintiff's direct supervisor and subjected him to a hostile work environment.

69.     42 U.S.C. § 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to his employment.

70.    Defendants discriminated against Plaintiff in the terms and conditions of his employment when, among other things, it imposed additional work requirements on him not required of other non-black employees, forced him to split credit for the account of Dr. Zwade Marshall with Ben Charlton, and refused to allow Plaintiff to inherit the accounts of Rick Jernigan.

71.    The above-pleaded discriminatory conduct toward Plaintiff constitutes unlawful race discrimination against Plaintiff in the terms and conditions of his employment in violation of 42 U.S.C. § 1981.

72.    Defendants undertook their conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Defendants.

73.    Defendants' actions constitute unlawful intentional race discrimination in violation of 42 U.S.C. § 1981.

74.    Defendant's actions were severe or pervasive and created a racially hostile work environment for Plaintiff.

75.    Defendants willfully and wantonly disregarded Plaintiff's federally protected rights and Defendants' discrimination against Plaintiff was undertaken in bad faith.

76.     As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

77.     Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendants' violation of his rights under 42 U.S.C. § 1981.

**COUNT III**
**TITLE VII – RACE DISCRIMINATION – DISPARATE TREATMENT**
*Against Defendant Medtronic*

78.     Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

79.     At all times material to this Complaint, Plaintiff was employed by Medtronic.

80.     Title VII prohibits Medtronic from discriminating against Plaintiff on the basis of race with regard to his employment.

81.     Medtronic discriminated against Plaintiff in the terms and conditions of his employment when, among other things, it imposed additional work requirements on him not required of other non-black employees, forced him to split credit for the account of Dr. Zwade Marshall with Ben Charlton, refused to allow Plaintiff to inherit the

accounts of Rick Jernigan, terminated him because of his race and refused to rehire him for positions he was qualified to perform.

82.    Additionally, and in the alternative, Plaintiff's race was a motivating factor in Medtronic's discriminatory actions.

83.    The above-pleaded discriminatory conduct toward Plaintiff constitutes unlawful race discrimination against Plaintiff in the terms and conditions of his employment in violation of Title VII.

84.    Medtronic undertook its conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Medtronic.

85.    Medtronic's actions constitute unlawful intentional race discrimination in violation of Title VII.

86.    Medtronic willfully and wantonly disregarded Plaintiff's federally protected rights and Medtronic's discrimination against Plaintiff was undertaken in bad faith.

87.    As a direct and proximate result of Medtronic's violations of Title VII, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other

indignities.

88.     Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Medtronic's violation of his rights under Title VII.

**COUNT IV**
**TITLE VII – RACE DISCRIMINATION – HOSTILE WORK ENVIRONMENT**
*Against All Defendants*

89.     Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

90.     At all times material to this Complaint, Plaintiff was employed by Medtronic.

91.     Title VII prohibits Medtronic from discriminating against Plaintiff on the basis of race with regard to his employment.

92.     Medtronic discriminated against Plaintiff in the terms and conditions of his employment when, among other things, it imposed additional work requirements on him not required of other non-black employees, forced him to split credit for the account of Dr. Zwade Marshall with Ben Charlton, and refused to allow Plaintiff to inherit the accounts of Rick Jernigan because of his race.

93.     Additionally, and in the alternative, Plaintiff's race was a motivating factor in Medtronic's discriminatory actions.

94.     The above-pleaded discriminatory conduct toward Plaintiff constitutes unlawful race discrimination against Plaintiff in the terms and conditions of his employment in violation of Title VII.

95.     Medtronic undertook its conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Defendants.

96.     Medtronic's actions constitute unlawful intentional race discrimination in violation of Title VII.

97.     Defendant's actions were severe or pervasive and created a racially hostile work environment for Plaintiff.

98.     Medtronic willfully and wantonly disregarded Plaintiff's federally protected rights and Medtronic's discrimination against Plaintiff was undertaken in bad faith.

99.     As a direct and proximate result of Medtronic's violations of Title VII, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

100.    Accordingly, Plaintiff is entitled to the equitable and monetary relief set

forth in the following prayer for relief for Medtronic's violation of his rights under Title VII.

**COUNT V**
**TITLE VII – SEX DISCRIMINATION – DISPARATE TREATMENT**
*Against Defendant Medtronic*

101.   Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

102.   At all times material to this Complaint, Plaintiff was employed by Medtronic.

103.   Medtronic discriminated against Plaintiff in the terms and conditions of his employment when, among other things, it terminated him because of his sex.

104.   Additionally, and in the alternative, Plaintiff's sex was a motivating factor in Medtronic's discriminatory actions.

105.   The above-pleaded discriminatory conduct toward Plaintiff constitutes unlawful sex discrimination against Plaintiff in the terms and conditions of his employment in violation of Title VII.

106.   Medtronic undertook its conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Medtronic

107.   Medtronic's actions constitute unlawful intentional sex discrimination in violation of Title VII.

108.   Medtronic willfully and wantonly disregarded Plaintiff's federally protected rights and Medtronic's discrimination against Plaintiff was undertaken in bad faith.

109.   As a direct and proximate result of Medtronic's violations of Title VII, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

110.   Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Medtronic's violation of his rights under Title VII.

## COUNT VI
## TITLE VII – INTERSECTIONAL DISCRIMINATION: RACE AND SEX – DISPARATE TREATMENT
### *Against Defendant Medtronic*

111.   Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

112.   At all times material to this Complaint, Plaintiff was employed by Medtronic.

113.   Medtronic discriminated against Plaintiff in the terms and conditions of his

employment when, among other things, it imposed additional work requirements on him not required of other non-black male employees, forced him to split credit for the account of Dr. Zwade Marshall with Ben Charlton, refused to allow Plaintiff to inherit the accounts of Rick Jernigan, and terminated him because of his race and sex.

114.   Additionally, and in the alternative, Plaintiff's race and sex were motivating factors in Medtronic's discriminatory actions.

115.   The above-pleaded discriminatory conduct toward Plaintiff constitutes unlawful race and sex discrimination against Plaintiff in the terms and conditions of his employment in violation of Title VII.

116.   Medtronic undertook its conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Medtronic

117.   Medtronic's actions constitute unlawful intentional intersectional discrimination in violation of Title VII.

118.   Medtronic willfully and wantonly disregarded Plaintiff's federally protected rights and Medtronic's discrimination against Plaintiff was undertaken in bad faith.

119.   As a direct and proximate result of Medtronic's violations of Title VII,

Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

120.   Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Medtronic's violation of his rights under Title VII.

**COUNT VII**
**TITLE VII – RETALIATION – FAILURE TO HIRE**
*Against Defendant Medtronic*

121.   Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

122.   Title VII prohibits Medtronic from retaliating against Plaintiff for engaging in protected activity with regard to his employment or candidacy for hire.

123.   Medtronic retaliated against Plaintiff in the terms and conditions of his employment when, among other things, it failed to hire him for any of the positions for which he was qualified.

124.   The above-pleaded retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in the terms and conditions of his employment in violation of Title VII.

125.   Medtronic undertook its conduct intentionally and maliciously with

respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Medtronic.

126.   Medtronic's actions constitute unlawful intentional retaliation in violation of Title VII.

127.   Medtronic willfully and wantonly disregarded Plaintiff's federally protected rights and Medtronic's retaliation against Plaintiff was undertaken in bad faith.

128.   As a direct and proximate result of Medtronic's violations of Title VII, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

129.   Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Medtronic's violation of his rights under Title VII.

**COUNT VIII**
**42 U.S.C. § 1981 – RETALIATION – FAILURE TO HIRE**
*Against Defendant Medtronic*

130.   A Plaintiff incorporates by reference paragraphs one through 52 of this Complaint, as if they were fully set forth herein.

131.   42 U.S.C. § 1981 prohibits Medtronic from retaliating against Plaintiff because he engaged in protected activity with regard to his employment or candidacy for hire.

132.   Medtronic retaliated against Plaintiff in the terms and conditions of his employment when, among other things, it failed to hire him for positions for which he was qualified because of his engaging in protected activity.

133.   The above-pleaded retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in the terms and conditions of his employment in violation of 42 U.S.C. § 1981.

134.   Medtronic undertook its conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Medtronic.

135.   Medtronic's actions constitute unlawful intentional retaliation in violation of 42 U.S.C. § 1981.

136.   Medtronic willfully and wantonly disregarded Plaintiff's federally protected rights and Medtronic's discrimination against Plaintiff was undertaken in bad faith.

137.   As a direct and proximate result of Medtronic's violations of 42 U.S.C. §

1981, Plaintiff has suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

138.   Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the following prayer for relief for Medtronic's violation of his rights under 42 U.S.C. § 1981.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

(a)     That a jury trial be had on all issues so triable;

(b)     Back pay and benefits;

(c)     Front pay and benefits;

(d)     Compensatory damages;

(e)     Punitive damages;

(f)     Declaratory relief;

(g)     Injunctive relief to prevent Defendants from engaging in such discriminatory conduct in the future;

(h)     Costs incurred in bringing this action, including Plaintiff's attorneys' fees;

(i)     Interest on all monetary awards; and

(j)     Such other and further relief the Court may deem appropriate.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

demand a trial by jury on all issues so triable.

Respectfully submitted this 12th day of December, 2022.

**BUCKLEY BEAL LLP**

By:     */s/ Joseph Quattlebaum*
        Edward D. Buckley
        Georgia Bar No. 092750
        edbuckley@buckleybeal.com
        Joseph Quattlebaum
        Georgia Bar No. 319971
        jquattlebaum@buckleybeal.com
        600 Peachtree Street NE
        Suite 3900
        Atlanta, GA  30308
        Telephone: (404) 781-1100
        Facsimile:  (404) 781-1101

        *Attorneys for Plaintiff*